Fulton J. Redman v. Commissioner.
Redman v. Commissioner
Docket No. 4243.
United States Tax Court
1945 Tax Ct. Memo LEXIS 197; 4 T.C.M. (CCH) 517; T.C.M. (RIA) 45171; May 15, 1945
Fulton J. Redman, Esq., 119 Exchange St., Portland 3, Me., pro se. Carl A. Stutsman, Jr., Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This proceeding involves an income tax deficiency for 1941 in the amount of $423.15. The issue presented is whether petitioner is entitled to deduct $3,500 as a bad debt under section 23 (k) of the Internal Revenue Code. Findings of Fact Petitioner is an attorney with an office at 119 Exchange Street, Portland 3, Maine. The record fails to show where his income tax return for the taxable year was filed. *198 In September 1936 petitioner "was urged to step in and save" the Portland Evening News, which was the only Democratic daily newspaper in Maine. Late in September 1936 he became president, without salary, of the corporation which published the newspaper, namely, the Maine Publishing Corporation, hereinafter referred to as the corporation. During the next 15 months petitioner and his wife put approximately $35,000 cash into the newspaper to keep it running. During the same period the debenture bondholders put in about $25,000. Petitioner and the representative of the bondholders, a Mr. Chapman, who with his family owned all the bonds, agreed that if they could "make the paper succeed" they would "reorganize its financial set-up on a fair and equitable basis as to stock and bond division." The money and effort that petitioner put into the paper were to receive recognition in any event. At the outset the advances by petitioner and his wife were for stock. The receipt for the first advance, dated October 2, 1936, states in part: "* * * received from Fulton J. Redman, $1,000 on account of stock. Maine Publishing Company by M. G. Pressey, Treasurer." Petitioner and his wife advanced *199 $12,000 or $15,000 for which receipts were issued on account of stock. The balance of the $35,000 was represented by promissory notes of the corporation. Of these latter advances an amount in excess of $3,500 was from petitioner's own funds. The stock outstanding was "probably endorsed in blank" to petitioner, but such stock was considered practically worthless in view of the bondholders' lien. In January 1938 petitioner resigned and he and his wife ceased making advances to the corporation. At or about the time petitioner resigned the bondholders foreclosed and took possession under the mortgage. From January until March or April 1938, Chapman and the bondholders continued publication of the newspaper. Finally, in April or May 1938, publication of the newspaper was suspended and since then there has been no publication. The mortgaged assets were not sold as a plant or going concern. Some if not all of the machinery has been stored. The accounts receivable built up from about $6,000 to about $18,000 during petitioner's administration were used principally to pay off creditors and possibly some amount to the bondholders. When petitioner resigned he gave no release of his rights. *200 No part of the advances made by petitioner have ever been repaid, either as a result of the foreclosure or otherwise. Petitioner, and later Chapman, attempted unsuccessfully to interest a newspaper chain in the Portland Evening News. After the attack on Pearl Harbor, December 7, 1941, petitioner abandoned hope for any revival of the newspaper. In computing his income tax liability for 1941 to be $79.25, petitioner considered that $3,500 of his advances to the corporation were worthless and claimed this amount as a bad debt deduction. Petitioner's determination of the amount of his advances that became worthless in 1941 was arbitrary; it was not based upon any percentage figure or other method of calculation. The respondent denied the deduction upon the ground that no evidence had been submitted to show that the alleged debt became worthless in 1941. Opinion This issue is governed by section 23 (k) of the Internal Revenue Code, as amended by section 124, Revenue Act of 1942 and section 113, Revenue Act of 1943, the pertinent portions of which are set forth in the margin. [1] In denying him a deduction thereunder petitioner contends that respondent has erroneously *201 treated him as a mere general creditor; that his claim was not wiped out by the bondholders taking possession of the machinery; that the attack on Pearl Harbor was a "justifiable" event in 1941 for treating the debt as a bad debt and taking the deduction claimed; and that the general requirement that losses be deducted in the year in which sustained calls for a practical, not a legal test. Respondent contends that the evidence fails to prove that the obligation owing to petitioner by the corporation became worthless in whole or in part during the taxable year. We agree with the respondent. No tangible assets from which collection could be realized were in existence *202 at the beginning of the taxable year as they were all taken over by the bondholders under the foreclosure proceedings in 1938. Whether petitioner rests his claim upon the existence of an alleged valuable good will as the only available asset of the newspaper which disappeared with the attack on Pearl Harbor, or upon his agreement with the bondholders that they would recognize his advances and efforts in the event the paper was revived, we think petitioner must lose. We are not convinced that a newspaper which operated at a loss of $60,000 over a period of about 15 months and then discontinued publication in April or May 1938 had an asset in the form of good will value on January 1, 1941, that could have been wiped out by an alleged "justifiable" event on December 7, 1941. Certainly there is no evidence here that would fix the value of good will of this newspaper on January 1, 1941, at $3,500 or any other amount. Since the statute requires the debt to become worthless within the taxable year a lack of value for the asset allegedly supporting the debt at the first of the taxable year would prohibit the deduction. Clarence Bonynge, 41 B.T.A. 84, 117 Fed. (2d) 157. On the *203 other point that petitioner had an agreement with the bondholders to recognize his efforts and advances if the newspaper was revived, the petitioner's testimony indicates that he still stands on the agreement and that if, at any time in the future, the newspaper is revived he expects to assert his rights regardless of the statute of limitations. He repeatedly testified that he considered that he and his wife acquired a proprietary interest in the Portland Evening News which they continued to hold. Neither Pearl Harbor nor any other event occurring during the taxable year deprived petitioner of his intention to recover under this agreement. Insofar as he claims the deduction because of the agreement becoming worthless in 1941 his contention must also be denied. Cf. Cittadini v. Commissioner (C.C.A., 4th Cir.), 139 Fed. (2d) 29, affirming memorandum opinion of the Tax Court. Decision will be entered for the respondent. Footnotes
1. Section 23 (k), Internal Revenue Code, as amended. In computing net income there shall be allowed as deductions: - * * * * *
(k) Bad Debts. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *↩